COMMONWEALTH *vs.* ARTHUR W. ROWE & another.

Suffolk. May 24, 1926. — October 13, 1926.

Present: BRALEY, CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Constitutional Law*, Trial by jury. *Practice, Criminal*, Waiver of trial by jury. *Superior Court. Jurisdiction.*

Although the defendant, named in an indictment charging either a misdemeanor or a felony, for reasons satisfactory to himself may waive his right to a trial by a jury, the Superior Court in 1925 had no jurisdiction to hear such an indictment without a jury.

A defendant in two indictments, one charging a felony and another a misdemeanor, with a full understanding of his rights, in writing requested as to both indictments "as a constitutional right" that he be tried on both and his guilt or innocence determined by a judge sitting in the Superior Court without a jury, and waived his right "under the Constitution and statutes of the Commonwealth to be tried by a jury." The trial proceeded before a judge without a jury. At the close of the evidence of the Commonwealth, the defendant filed a writing withdrawing such waiver and moving "that this trial be declared a mistrial because not tried before a jury." The motion was denied. The judge found the defendant guilty under both indictments. *Held*, that the Superior Court was without jurisdiction to hear either indictment without a jury and that such lack of jurisdiction could not be waived by the defendant.

Two INDICTMENTS, found and returned on April 13, 1925, the first charging larceny in eleven counts and the second charging a conspiracy to commit larceny.

Proceedings in the Superior Court when, in May, 1925, the case was heard by *Lummus*, J., without a jury, are described in the opinion. After the findings and rulings therein described, the trial judge reported the case to this court for determination.

The case was submitted on briefs.

*A. S. Allen, C. C. Steadman, & C. H. McGlue,* for the defendants.

*G. Alpert,* Assistant District Attorney, for the Commonwealth.

WAIT, J.    Arthur W. Rowe and Lemuel Rowe were indicted by the Grand Jury for the Suffolk District in eleven counts for larcenies.    The amounts alleged to have been stolen in counts 5, 6, 8, 9 and 11, equalled or exceeded $100 in value and were less than $100 in value in the remaining counts.    Under our statutes, therefore, the offences charged were felonies in the former and misdemeanors in the latter counts.    G. L. c. 266, § 30.

These defendants were at the same time charged in another indictment with conspiring to steal — a misdemeanor. They pleaded not guilty to both indictments when arraigned, and later, before trial, each signed and filed a waiver of trial by jury in the following form: "I, . . . , the defendant in the above entitled cause, having been indicted for larceny and conspiracy and having pleaded not guilty, hereby request as a constitutional right, that I be tried and my guilt or innocence determined by a judge of the Superior Court sitting without jury, and in support of my request I hereby waive my right for this trial under the Constitution and statutes of the Commonwealth to be tried by a jury."    The signature of each defendant was witnessed by his counsel.

They proceeded to trial before a single judge of the Superior Court sitting without a jury, who, after hearing evidence, decided both law and fact.    He found both defendants guilty upon the indictment for conspiracy; Lemuel Rowe not guilty upon all the counts of the indictment charging larceny; and Arthur W. Rowe guilty upon counts 1, 6, 7, 8, 10, and 11, and not guilty upon the remaining counts of that indictment.

At the close of the evidence for the Commonwealth and after it had rested, the defendants filed, in each case, a motion which it was agreed should be considered as separate motions "as to such charges as are misdemeanors and to such charges as are felonies" and which was as follows: "Now come the defendants in the above entitled action

and withdraw their waiver of a trial by jury previously filed by them and move that this trial be declared a mistrial because not tried before a jury." It was signed in person by each defendant.

The motions were denied and trial proceeded. The defendants introduced evidence and at the close of the evidence filed motions that upon all the evidence findings of not guilty be entered upon each count. These motions also were denied. Upon the indictment for larceny the judge ordered that Lemuel be discharged and go without day; and, being of opinion that important and doubtful questions arose on the exceptions claimed, with the consent of Arthur W. Rowe, reported the cases to this court and continued the indictments to await its determination. A similar report and continuance was made in the case of the indictment for conspiracy.

The first question for our determination is, whether any valid trial has been had.

The defendants contend that they are not bound by the papers signed by them demanding as a constitutional right a trial by the court without a jury and waiving their constitutional right to a trial by jury, and, further, that the Superior Court sitting without a jury has no jurisdiction to try an indictment for felony or for misdemeanor.

No question arises under the Constitution of the United States. *Hallinger* v. *Davis,* 146 U. S. 314. We have no doubt that the right to trial by jury guaranteed by our Constitution to every person, Declaration of Rights, arts. 12, 15, is a privilege which the person may waive for reasons satisfactory to himself. This seems the necessary conclusion not only from the form of words used in the Constitution, but also from the language of this court in carefully considered opinions. Decisions in other jurisdictions which have held that the right to a trial by jury cannot be waived where crime rising beyond the grade of "petty offences" is charged, have turned upon the interpretation of words substantially different from those used in our Constitution; see *State* v. *Cottrill,* 31 W. Va. 162, and cases there cited; or upon a view of public policy which our decisions show has not prevailed in this Commonwealth, see *State* v. *Woodling,* 53 Minn. 142.

Art. 12 provides: "And the legislature shall not make any law, that shall subject any person to a capital or infamous punishment, excepting for the government of the army and navy, without trial by jury," and thus by its exception shows that its authors did not regard the right as one of the "inalienable rights" of the free man. It could be waived by enlisting in the army or navy. No prohibition is placed upon the individual in regard to it. The prohibition is placed upon the State; and that prohibition has its limitations, not only with regard to the army and navy just referred to, but in the exception in art. 15 "in cases in which it has heretofore been otherwise used and practised, . . . in causes arising on the high seas, and such as relate to mariners' wages."

We find nothing in the words of our Constitution which declares or manifests an intention to deprive the individual of power to refuse to assert his constitutional right to trial by jury.

The precise question which we are now asked to decide never before has been presented for decision to this court; but there are a number of cases in which the nature of the right has been touched upon and which aid in its determination. The recent case of *Commonwealth* v. *Kemp*, 254 Mass. 190, which may seem to have passed upon it, confined its decision to the facts of that case, and is not authority controlling here. In *Commonwealth* v. *Kemp*, there was no disputed question of fact before the court. The parties submitted the case on agreed facts. There was, thus, no issue of fact for a jury, and so, in truth, no waiver of the right to a jury trial. It is open to serious question, also, upon the facts of the case, whether the defendant, in view of the petty nature of the offence charged, had a constitutional right to a jury trial. *Schick* v. *United States*, 195 U. S. 65. The opinion, however, touched upon the question of waiver and cited, pages 191, 192, the Massachusetts cases beginning with *Jones* v. *Robbins*, 8 Gray, 329, which have stated that the constitutional right to a trial by jury can be waived. It is unnecessary to discuss the cases there referred to, or to repeat what was said by this court in

*Parker* v. *Simpson*, 180 Mass. 334, 346, *et seq., Bothwell* v. *Boston Elevated Railway*, 215 Mass. 467, *Crocker* v. *Justices of the Superior Court*, 208 Mass. 162, and *Ashley* v. *Three Justices of the Superior Court*, 228 Mass. 63, in which the history of the right to trial by jury has been fully expounded. Modern research into the history of the jury has rendered of little value many of the historical discussions of the right to jury trial at common law contained in the decisions of the courts of this country; and it may be doubted whether even now that history is fully known. Again and again, as the cases referred to illustrate, this court has treated the right as a privilege sacredly regarded by the Commonwealth and preserved to the individual against assault by the State; but a privilege which he could waive, and, in certain circumstances, would be treated as waiving.

We see no good ground for taking a different position in the facts of this case. The form of the waivers, signed in person by the defendants, witnessed by their counsel, asserting a constitutional right to a trial by the court without jury, and their conduct in proceeding with trial until the Commonwealth rested before seeking to withdraw their waivers, make clear that they understood fully what they were doing. There is nothing to indicate that they have been misled in reliance upon any advice of the court which can be regarded as error in law. See Bish., New Crim. Proc. § 120 (2). They had no right to withdraw their waivers. The rulings refusing their requests were correct. There was no lack of power to waive the constitutional right to a trial by jury.

We are compelled, however, to hold that the waivers are nugatory and there has been no valid trial.

Chief Justice Shaw, in *Commonwealth* v. *Dailey*, 12 Cush. 80, 83, laid down as the law of Massachusetts, that a defendant "may waive any matter of form or substance, excepting only what may relate to the jurisdiction of the court." It remains to consider whether the Superior Court without a jury had power to try the defendants, and to impose a valid sentence if it found them guilty. *Commonwealth* v. *Kemp, supra,* page 192, says: "There is no juris-

dictional requirement that all criminal trials must be by jury," and it points out that where all the facts are agreed, or where, in any way, only a question of law is to be decided, there is no occasion for a jury; and that the judge alone can make decision and impose a valid sentence. That case further comments on the words of St. 1924, c. 485, § 1, that a judge of a district court may "sit in the Superior Court at the trial or disposition with or without a jury . . . of any misdemeanor . . ." as implying that there may be trials without a jury; but it does not indicate that the words convey any grant of power to try contested facts without a jury.

We know that during the colonial period criminal offences were tried by the Court of Assistants, at times, without a jury. The records of the court show that defendants were asked how they would be tried, and, occasionally, chose trial by the bench rather than by a jury, see 1 Records of the Court of Assistants, 102, where the report shows that to an indictment Walter Gendall "pleaded not Guilty Refferd himself for his tryall to the Bench" and was found guilty by the magistrate and sentenced. In the same year, 1677, John Watts "put himselfe on his Tryall by God & the bench," was tried and convicted, 1 Records of the Court of Assistants, page 103; and page 104, William Pope, complained of for "his abusive Carriage in Cursing of the Authority here making an order to prevent the spreading of ye smale pox, . . . not willing to be trjed by a Jury but reffering himself to the Gouernor & magistrates" was found guilty and sentenced.

The "Body of Liberties" adopted in 1641 provided that: "29.   In all actions at law it shall be the libertie of the plaintife and defendant by mutual consent to choose whether they will be tryed by the Bensh or by a Jurie, unlesse it be where the law upon just reason hath otherwise determined. The like libertie shall be granted to all persons in Criminall cases."

Acts providing that all trials should "be by the verdict of twelve men, peers or equals . . . except in cases where the law of the province shall otherwise provide," and establishing courts, in which "all matters and issues in fact arising or

happening . . . within this province shall be tryed by twelve good and lawful men of the neighbourhood," were passed in 1692–3 and in 1697, but never became law because they were disallowed by the Privy Council. Prov. Laws 1692–3, c. 11; c. 33, § 16; 1697, c. 9, § 10. *Mountford* v. *Hall,* 1 Mass. 443, decided in 1805, and *Shirley* v. *Lunenberg,* 11 Mass. 379, decided in 1814, illustrate cases where trial by jury was not had. No statute passed before the enactment of Revised Statutes in 1836 has been called to our attention which made trial by jury obligatory. Apparently at arraignment defendants who pleaded not guilty were asked how they would be tried. See statement of Thatcher in argument, *Commonwealth* v. *Hardy,* 2 Mass. 303, 306. Although the answer probably invariably was that he placed himself upon the country, the inquiry implied that a choice of method existed.

The Revised Statutes, however, by c. 123, § 3, provided that "No person indicted for an offence shall be convicted thereof, unless by confession of his guilt in open court, or by admitting the truth of the charge against him, by his plea or demurrer, or by the verdict of a jury, accepted and recorded by the court." They provided further, c. 136, § 28, "When any person is arraigned upon an indictment, it shall not be necessary, in any case, to ask him how he will be tried." These were new enactments which seem to imply that in proceedings begun by indictment only one method of trial of disputed facts existed, and that the jury was an indispensable part of the court for such trial. This implication is further supported by the provisions of c. 137, § 1: "Issues of fact, joined upon any indictment, shall be tried by a jury, drawn and returned in the manner prescribed by law for the trial of issues of fact in civil causes," also a new enactment.

These provisions of statute law have been continued in force to the present time, through the varied revisions of our laws, and are now G. L. c. 263, § 6; G. L. c. 277, § 71; and G. L. c. 278, § 2. The words of Rev. Sts. c. 137, § 1, were modified by inserting "or complaint" after "indictment" in the Revised Laws (R. L. c. 219, § 2,) which took effect January 1, 1902; and the present statute applies to issues of fact

joined in the Superior Court upon a complaint as well as upon an indictment. No comment upon the change was made by the commissioners in their report. It is possible that they regarded the section as relating merely to the method of drawing and returning the jury for criminal trials. This court, however, in *Green* v. *Commonwealth,* 12 Allen, 155, 168, cites the section, then Gen. Sts. c. 172, § 1, as defining the trial, rather than the jury.

It is noteworthy that no claim of right to trial without a jury in a criminal matter has been made, heretofore, to this court. In our opinion it has been the belief of lawyers generally that in the absence of statutes giving the power, a judge without a jury did not constitute a court competent for the trial of disputed facts in criminal cases, which rose above the degree of petty offences.

There are many decisions and *dicta* in other jurisdictions that there is no competent tribunal for such trial in the absence of a jury, unless authority so to proceed has been conferred by statute or by the Constitution of the State upon the court without a jury. We do not attempt to cite them all. A very full reference to them is made in *State* v. *Cottrill, supra,* and again in *State* v. *Baer,* 103 Ohio St. 585. See also *State* v. *Maine,* 27 Conn. 281; *Danner* v. *State,* 89 Md. 220; *Cancemi* v. *People,* 18 N. Y. 128; *State* v. *Battey,* 32 R. I. 475; *Mays* v. *Commonwealth,* 82 Va. 550; *Schick* v. *United States, supra.*

No precedent has been called to our attention at common law for the trial by the court, without a jury, of any crimes except those described in adjudged cases and by elementary authorities as minor or petty offences involved in the internal police of the State. The common law of England had been to some extent modified in Massachusetts before the adoption of our Constitution, and it was the common law as so modified which was taken over as the law of this Commonwealth under our Constitution. *Commonwealth* v. *Knowlton,* 2 Mass. 530, 534.

Trials of contested facts in serious criminal offences had been had here without a jury. From 1694 onward, however, we are without record of such a trial. In *King* v. *Perkins,*

Holt, 403, decided in 1698, Holt, C.J., said that all the judges were of opinion that, although the parties consented, a jury could not be withdrawn in a capital case. The insistence of the people of Massachusetts just prior to our declaration of independence from England upon trial by jury as a safeguard for the individual, is well known. The care taken to protect it against legislative assault is shown by the provisions of our Declaration of Rights. We think, therefore, that in interpreting the language of statutes which have come to us practically unchanged since 1836, we must bear this history in mind, and, giving to the words their ordinary meaning, interpret them as making the jury a constituent part of the tribunal for the determination of disputed facts whenever a defendant pleaded not guilty to an indictment, whether that indictment charged felony or misdemeanor, and whether or not such had been the common law of the Commonwealth before 1836.

*Commonwealth* v. *Dailey, supra,* is not to be taken as deciding otherwise. The court distinctly stated that it was not passing upon "whether the court can authoritatively order any other mode of trial, in cases civil or criminal." The court which tried Dailey had a legal jury when the trial began. The accused was not under indictment, so that the statute in regard to trials by jury did not apply. If he had a right to a jury trial by twelve jurors it was not by virtue of the statute. The Municipal Court of the City of Boston, in which the trial took place, had jurisdiction to try such a complaint on the facts and, it would seem, in the absence of indictment, without a jury. St. 1799, c. 81. This court recognized that consent could not confer jurisdiction; but, as already stated, decided merely that the accused could "waive any matter of form or substance, excepting only what may relate to the jurisdiction of the court."

It is true that the Superior Court, although created by statute, is a court of general jurisdiction. *Crocker* v. *Justices of the Superior Court, supra;* but this does not prevent specific limitation of its powers by statute. Such limitation does exist. The Legislature, which imposed the limitation, can remove it. In so doing, it will be acting within its con-

stitutional powers, as the right of the accused to a jury trial on disputed facts will not be lessened.

We need not consider the right to a trial without a jury asserted in the waivers. As we construe the law, the Commonwealth has not provided any tribunal for such a trial. There is no right in the individual to compel the Commonwealth to supply such a tribunal, which this court can vindicate.

Our determination that the court was without jurisdiction to determine the disputed facts renders it unnecessary to pass upon the other exceptions. The judge should have ruled that the proceeding before him was a mistrial. The exceptions of the defendants to the refusal are well taken. The order must be that the findings of the judge be set aside, and the cases stand for further proceedings in accordance with law.

*So ordered.*